UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
ANNE BARTON, *et al.*          )
                               )
       Plaintiffs,       )
                               )
   v.                          )   Civil Action No. 17-1188 (ABJ)
                               )
U.S. GEOLOGICAL SURVEY, *et al.* )
                               )
       Defendants.       )
                               )

## MEMORANDUM OPINION

Plaintiffs Anne Barton, Carol Grunewald, and Mary Rowse have filed a motion for an award of attorneys' fees and costs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E)(i). Pls.' Application for Attys.' Fees & Costs [Dkt. # 20] ("Pls.' Mot."). Plaintiffs seek an award of $78,020.00 for attorneys' fees related to the underlying FOIA suit, plus $26,928.00 in fee litigation, and $2,097.31 in costs. Pls.' Mot. at 24; Pls.' Reply to Defs.' Resp. to Pl.'s Mot. [Dkt. # 28] ("Pls.' Reply") at 11. In total, plaintiffs request a $105,619.81 award.[1] *See* Pls.' Mot. at 24; Pls.' Reply at 11. Defendants U.S. Geological Survey and the U.S. Department of the Interior concede that plaintiffs are eligible for and entitled to attorneys' fees, but they maintain that the amount sought is unreasonable. Defs.' Resp. to Pls.' Mot. [Dkt. # 27] ("Defs.' Opp.") at 1.

---

1    This amount reflects a $1,425.50 reduction from the initial amount sought in the fee petition. Pls.' Mot. at 24. Plaintiffs acknowledged in their reply that certain time entries were erroneous and duplicative. Pls.' Reply at 11 n.5. The total amount has also been reduced by $100 due to an inadvertent mathematical error in the fee petition – $78,020 in attorneys' fees for the underlying litigation, plus $14,790 in fee litigation amounts to $92,810, not $92,910 as plaintiffs stated in their motion. *See* Pls.' Mot at 24.

Upon consideration of plaintiffs' motion, their exhibits, the pleadings, and the relevant legal authorities, the Court grants in part and denies in part plaintiffs' motion for attorneys' fees and costs.

## BACKGROUND

Plaintiffs are D.C. residents who oppose the practice adopted by the National Park Service ("NPS" or "Park Service") of killing white-tailed deer in Rock Creek Park. Compl. [Dkt. # 1] ¶ 1. Between 2001 and 2014, defendant U.S. Geological Survey ("USGS"), a federal agency within the Department of Interior, conducted scientific research on the impact of the deer on the park's vegetation. *Id.* ¶¶ 2, 11–12. That research was summarized in a report drafted by Ms. Cairn Kraft and Dr. Jeff Hatfield ("Kraft Report") which the Park Service relied on to conclude that the deer population was interfering with the forest's ability to regenerate and should be managed. *Id.* ¶ 11. On December 16, 2016, plaintiffs submitted a FOIA request to USGS and the Department of Interior seeking the scientific data and analysis cited in the report, specifically:

(a) the completed statistical analysis;
(b) the draft report;
(c) the final report that was submitted to the NPS;
(d) all of the raw data upon which the statistical analysis is based;
(e) all peer review responses concerning this report; and
(f) any and all other documents concerning the particular statistical analysis referenced [in the report]

Ex. F to Pls.' Mot. for Summ. J. [Dkt. # 14-9] ("FOIA Request").

Defendants responded to the FOIA Request on February 9, 2017 by turning over 238 pages related to Items (b) through (e) of the request. Decl. of Brian May [Dkt. # 12-2] ("May Decl.") ¶ 23. They withheld 2,447 pages responsive to Items (a) through (f) based on FOIA Exemption 5. *Id.*; *see* 5 U.S.C. § 552(b)(5).

Plaintiffs filed an administrative appeal on March 31, 2017, arguing that Exemption 5 did not apply to the withheld materials. Ex. Q to Pls.' Mot. for Summ. J. [Dkt. # 14-17] ("FOIA

2

Appeal") at 2. After receiving no response within the twenty-day statutory window, plaintiffs filed this action on June 16, 2017. Compl. ¶ 2; Pls.' Mem. in Opp. to Defs.' Mot. for Summ. J. [Dkt. # 15] ("Pls.' Opp.") at 23.

Defendants maintain that they never received plaintiffs' appeal, *see* May Decl. ¶ 25, but nevertheless, they conducted another review of the withheld information. Defs.' Status Report [Dkt. # 8] ¶ 2. On November 8, 2017, USGS released an additional 2,447 pages of records. Ex. R to Pls.' Cross-Mot. for Summ. J. [Dkt. # 14-18]. While this release contained "all of the raw data collected by the scientists," the defendants "continued to withhold other information, including peer review comments on the 'draft' report, and the vast majority of both the Final and Draft Reports." Pls.' Opp. at 16.

Thereafter, plaintiffs decided to limit the issues to be litigated to the Final Report and Draft Reports, Ex. V to Pls.' Cross-Mot. for Summ. J. [Dkt. # 14-22], and the parties agreed to a briefing schedule for their motions for summary judgment. On February 14, 2018, defendants filed a motion for summary judgment, arguing that the Final Report and Draft Reports were exempt under FOIA Exemption 5. Defs.' Mot. for Summ. J. [Dkt. # 12] at 1. Plaintiffs opposed that motion and cross-moved for summary judgment on March 30, 2018. Pls.' Cross-Mot. for Summ. J. [Dkt. # 14].

On April 30, 2018, defendants reversed their position and determined it was no longer necessary to withhold the Final and Draft Reports. Joint Status Report [Dkt. # 16] ¶ 3. They agreed to release the documents in full to plaintiffs. *Id.* Once the motions for summary judgment became moot, the parties turned their attention to attorneys' fees. *Id.* at ¶¶ 3–4.

Plaintiffs filed the pending motion for attorneys' fees and costs on September 26, 2018. *see* Pls.' Mot., defendants submitted an opposition, *see* Defs.' Opp., and plaintiffs filed a reply on

3

April 9, 2019. Pls.' Reply. Plaintiffs subsequently filed a Notice of Supplemental Authority. Pls.' Notice of Suppl. Authority [Dkt. # 29] ("Pls.' Suppl.").

## ANALYSIS

Courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred" in any FOIA case where "the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). In order to recover fees and costs, a FOIA plaintiff must first show that he is eligible, and second, that he is entitled to such an award. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011), citing *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 368-69 (D.C. Cir. 2006). Here, defendants agree that the plaintiffs are both eligible and entitled to a fee award. Defs.' Opp. at 1.

The Court must then determine whether the requested award is reasonable. *See* 5 U.S.C. § 552(a)(4)(E)(i) (providing for "*reasonable* attorney fees and other litigation costs") (emphasis added). The usual method for determining a reasonable award is to calculate the "lodestar" amount, which is found by multiplying "the hours reasonably expended in the litigation by a reasonable hourly fee." *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). The Court has broad discretion in determining an appropriate fee award, and it may modify the request based on the reasonableness of the desired amount and the facts of the case. *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 203 (D.D.C. 2016), citing *Judicial Watch*, 470 F.3d at 369.

A plaintiff bears the burden of establishing both the reasonableness of the hourly rate and the reasonableness of the number of hours spent on a particular task. *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015), *citing Covington v. District of Columbia*, 57 F.3d 1101, 1107–08 (D.C. Cir. 1995). To show the reasonableness of the hourly rates, a plaintiff must submit

evidence related to: (1) "the attorneys' billing practices"; (2) "the attorneys' skill, experience, and reputation"; and (3) "the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107. To show the reasonableness of hours spent on a task, a plaintiff must submit a "sufficiently detailed [invoice] to permit the District Court to make an independent determination whether or not the hours claimed are justified." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). Once the plaintiff has met his burden, the number of hours and rate are presumed reasonable, and the burden then shifts to the defendant to rebut the requested rate with "equally specific countervailing evidence." *Covington,* 57 F.3d at 1109–10, *quoting Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326.

In total, plaintiffs seek an award of $105,619.81, itemized as $78,020 in attorneys' fees related to the underlying FOIA suit, $26,928.00 for fee litigation, and $2,097.31 in costs.[2] *See* Pls.' Mot. at 24; Pls.' Reply at 11. In support of their fee petition, plaintiffs submitted time records for two attorneys and a law clerk, billed at the following rates:

- Katherine A. Meyer: 78.71 hours at $865 per hour.
- Elizabeth Lewis: 23.5 hours at $358 per hour.
- Brieanah Schwartz: 7.81 hours at $195 per hour.

*See* Pls.' Mot. at 23; Attach. 1 to Ex. 6 of Pls.' Mot. [Dkt. # 20-6] ("Time Records"); Attach. 2 to Ex. 6 of Pls.' Mot. [Dkt. # 20-6] ("LSI *Laffey* Matrix").

Defendants maintain that plaintiffs' requested award is unreasonable because it: "(1) is based on unreasonably high hourly rates, (2) seeks payment for administrative and ministerial tasks at an excessive rate, (3) seeks fees for tasks that were not reasonably necessary to the litigation,

---

2      Plaintiffs request $14,790 in connection with the fee application, *see* Pls.' Mot. at 24, and $12,138 in connection with the reply, *see* Pls.' Reply at 11, for a total amount of $26,928 for fees on fees.

(4) seeks payment for tasks that were duplicative or excessive, and (5) seeks an excessive amount for this fee litigation." Defs.' Opp. at 3. Defendants do not challenge plaintiffs' requested reimbursement of $2,097.31 for costs. *Id.* at 2 n.2. In total, defendants argue that the awarded fees should be no more than $37,225 for litigating the merits and no more than $10,000 for fees on fees. *Id.* at 1–2.

I. **The Hours Reasonably Expended**

Plaintiffs have the burden of demonstrating that the number of hours expended on particular tasks by their attorneys were reasonable. *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327. Attorneys must "maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Id.* "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Plaintiffs submitted time records detailing the hours expended by each attorney and law clerk for the tasks performed in the case. *See* Time Records. In her declaration, the lead attorney, Katherine Meyer, asserts that "all of the hours reflect[ed] in the time records were reasonably expended on litigation," but that in an "exercise of billing judgment" she deducted half of the hours spent on the matter by attorney Lewis, some of the hours expended by law clerk Schwartz, and all of the hours spent by another associate. Decl. of Katherine A. Meyer, Ex. 6 to Pls.' Mot. [Dkt. # 20-6] ("Meyer Decl.") ¶ 8; Pls.' Reply at 3. Defendants challenge several of the remaining time entries as excessive, redundant, and unnecessary. *See* Defs.' Opp. at 4–6.

A. **"Background" Section for Summary Judgment Brief**

Defendants argue that the seventeen hours plaintiffs' lead attorney, Katherine Meyer, spent drafting the "background" section of the summary judgment brief is excessive and should be

6

reduced. Defs.' Opp. at 5. The Court is inclined to agree, particularly given Meyer's experience with this particular matter and with FOIA litigation in general. As plaintiffs themselves state, Meyer is a FOIA expert whose "prior representation of [p]laintiffs in litigation concerning the National Park Service's lethal control program in both this Court and the Court of Appeals meant that she was uniquely familiar with the history and relevant factual background of that program." Pls.' Mot. at 22. Given Meyer's expertise and unique familiarity with the underlying facts, the Court finds that the seventeen hours she billed for the "background" section of the summary judgment brief is excessive, and it will reduce the amount to twelve hours.

B.     **Other Excessive or Unnecessary Entries**

Defendants also move to fully exclude the following time entries which they consider unnecessary and unrelated to this case:

- drafting a blog post (LL entry 6/16/17);

- an unarticulated and inapplicable waiver argument (LL entries 3/5/18, 3/6/18);

- FOIA exemption 3, which was not at issue in this case (LL entry 3/7/18);

- the impact of a party's failure to submit a statement of material facts, inapplicable here since defendants did, in fact, file a statement of material facts in connection with their summary judgment motion (BS entry 3/13/18);

- and discovery in civil litigation (BS entry 3/14/18).

Defs.' Opp. at 5–6.

Plaintiffs concede that both the blog post, and the time spent researching a party's failure to submit a statement of material facts should be excluded. Pls.' Reply at 3 n.1; Time Records at 3–4 (LL entry on 6/16/17), (BS entry on 3/13/18).

As to the other time entries, after reviewing the records, the Court concludes that the three hours Lewis spent researching the "waiver of argument in FOIA litigation," Time Records at 3 (LL entry on 3/5/18, 3/6/18), and the 1.38 hours Schwartz spent researching discovery in civil litigation, *id.* at 4 (BS entry on 3/14/18), are unreasonable since they bear no obvious connection to this litigation. Plaintiffs provide no compelling reason in their reply as to the relevance of this research. *See* Pls.' Reply at 5. Accordingly, these entries will also be excluded from the calculation of the fee award.

Finally, the Court will allow plaintiffs to receive compensation for the one hour attorney Lewis spent researching FOIA Exemption 3. Time Records at 3 (LL entry on 3/07/18). As plaintiffs explained in their reply, counsel researched this exemption in response to the government's assertion that it was relying on an internal agency "policy" to withhold the records. Pls.' Reply at 5, quoting Decl. of Brian May, USGS [Dkt. # 12-2] ¶ 19. Plaintiffs reasonably believed it was necessary to argue that the only other exemption that could apply, FOIA Exemption 3, allowed the withholding of records only if commanded by Congress in another statute.

## II. The Reasonable Hourly Rate for Legal Work

Plaintiffs bear the burden of establishing the reasonableness of the hourly rates charged by their attorneys for services rendered in the underlying proceedings. *Eley*, 793 F.3d at 100. "Whether an hourly rate is reasonable turns on three sub-elements: (1) 'the attorney's billing practices,' (2) 'the attorney's skill, experience, and reputation' and (3) 'the prevailing market rates

in the relevant community.'" *Id.*, quoting *Covington*, 57 F.3d at 1107. Only the third element is in dispute.[3]

To establish the prevailing market rate, a plaintiff must "produce satisfactory evidence – *in addition to* the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Eley*, 793 F.3d at 104, quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (emphasis in original).

Fee matrices are "one type of evidence that 'provides a useful starting point' in calculating the prevailing market rate." *Eley*, 793 F.3d at 100, quoting *Covington*, 57 F.3d at 1109. A fee matrix is "a chart averaging rates for attorneys at different experience levels. For decades, courts in this circuit have relied on some version of what is known as the *Laffey* matrix." *DL v. District of Columbia*, 924 F.3d 585, 587 (D.C. Cir. 2019).[4] The original *Laffey* matrix, which was created in the 1980s, relied upon "a relatively small sample of rates charged by sophisticated federal-court practitioners in the District of Columbia," but it has undergone several changes since then and over

---

3 As to the first element, plaintiffs' attorneys aver that they do not have standard billing rates and "routinely represent non-profit organizations and individuals in public-interest litigation" on a statutory attorneys' fees basis. Meyer Decl. ¶ 2. Attorneys without standard billing rates are "entitled to an award based on the prevailing market rates." *Gatore v. U.S. Dep't of Homeland Sec.*, 286 F. Supp. 3d 25, 33 (D.D.C. 2017), quoting *Covington*, 57 F.3d at 1107 (internal quotation marks omitted) *abrogated on other grounds by DL v. District of Columbia*, 924 F.3d 585, 593 (D.C. Cir. 2019). Turning to the second element, plaintiffs have adequately established that their lead attorney, Katherine Meyer, is an expert in FOIA litigation with a high degree of skill and experience in the FOIA field. Meyer Decl. ¶ 5; *see also* Decl. of Stephen L. Braga, Ex. 5 to Pls.' Mot. [Dkt. # 20-5] ("Braga Decl.") ¶ 4 (corroborating Meyer's high skill in FOIA litigation). Defendants do not question the high skill, experience, and reputation of plaintiffs' counsel. *See* Defs.' Opp. The Court therefore concludes that plaintiffs have met their burden as to the second element as well.

4 The *Laffey* Matrix was first set forth in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984). *Eley*, 793 F.3d at 100.

time two competing matrices have emerged – the Legal Services Index ("LSI") Matrix and the USAO Matrix, and the rates included in the LSI are the higher of the two. *Id.* at 587, 596. While the LSI Matrix is designed to reflect the hourly rates charged by complex, federal court practitioners in Washington, D.C., the USAO Matrix has been based since 2015 on "data for all types of lawyers – not just those who litigate complex federal cases – from the entire metropolitan area." *Id.* at 587.

Here, plaintiffs seek to recover attorneys' fees at the higher LSI Matrix rates, while defendants insist that the lower USAO Matrix rates are more appropriate. *See* Pls.' Mot. at 21–24; Defs.' Opp. at 3. The difference is not insignificant. For instance, under the LSI Matrix, attorney Meyer's rate is $865 per hour, while under the USAO Matrix it is approximately $602 per hour. Pls.' Mot. at 23; Defs.' Opp. at 3; *see also USAO Attorney's Fees Matrix*, https://www.justice.gov/usao-dc/file/796471/download (last visited September 29, 2019).

Because the D.C. Circuit deems fee matrices as "somewhat crude," fee applicants must "supplements fee matrices with other evidence such as 'surveys to update the[m]; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases.'" *Eley*, 793 F.3d at 101, quoting *Covington*, 57 F.3d at 1109. Here, in addition to supplying an affidavit from their lead attorney averring that "the rates being sought for work on this case are consistent with those set forth" in the attached LSI Matrix, *see* Meyer Decl. ¶ 10, plaintiffs provided three additional declarations. Two of the declarations are from the economist and author of the LSI Matrix, Dr. Michael Kavanaugh, *see* Aff. of Dr. Michael Kavanaugh, Ex. 7 to Pls.' Mot. [Dkt. # 20-7] ("First Kavanaugh Decl."); Attach. 1 to Pls.' Notice of Filing Corrected Ex. [Dkt. # 31-1] ("Second

Kavanaugh Decl."), and the third is from Stephen L. Braga, an attorney who specializes in white collar criminal defense, complex civil litigation, and appellate advocacy in Northern Virginia. Decl. of Stephen Braga, Ex. 5 to Pls.' Mot. [Dkt. # 20-5] ("Braga Decl.") ¶ 1.

The First Kavanaugh Declaration, dated April 2012, which was prepared for a separate fee case, explains the methodology of the LSI matrix and why in his view, it is a more accurate representation of the prevailing market rates for complex federal litigation in Washington, D.C. First Kavanaugh Decl. ¶¶ 8–13, 24. However, that declaration is somewhat outdated since it fails to account for changes in the USAO Matrix that took place in 2015, including a change to the inflation index that is more tailored to the legal market. *See DL*, 924 F.3d at 590 (noting changes to USAO Matrix since 2015 including the use of an industry-specific inflation index); *Elec. Privacy Info. Ctr. v. U.S. Drug Enf't Admin.*, 266 F. Supp. 3d 162, 171 (D.D.C. 2017) (citing an expert's opinion that Dr. Kavanaugh's older affidavit is no longer helpful in light of the USAO updated Matrix).

The Second Kavanaugh Declaration, dated September 2016, acknowledges this change but it finds other deficiencies with the USAO Matrix, namely that it is "no longer based on a sample of rates for complex federal litigation." Second Kavanaugh Decl. ¶ 21. While the declaration is useful in understanding the differences between the matrices, it is not helpful in determining whether the LSI Matrix should apply in this particular case. Kavanaugh's declaration was prepared for a complex IDEA class action suit. *See* Pls. Suppl. at 1 (stating that the Second Kavanaugh Declaration was submitted in *DL v. D.C.*, 924 F.3d 585 (D.C. Cir. 2019)). By contrast, this was a straightforward FOIA brought by three plaintiffs that presented a narrow set of legal issues. So it is unclear whether Kavanaugh would opine that the LSI Matrix rates for "complex federal litigation in Washington, D.C," *see* Second Kavanaugh Decl. ¶ 23, should apply to cases such as

this one. *See, e.g., Smith v. District of Columbia*, 249 F. Supp. 3d 106, 112 (D.D.C. 2017) ("Plaintiff has simply lifted Dr. Kavanaugh's affidavit from [another] case and thus there is nothing in the record to indicate that the economist was offering an opinion about cases like this one. . . .").

The declaration from attorney Stephen L. Braga provides no further insight on this point. *See* Braga Decl. While Braga attests to attorney Meyer's significant expertise as a FOIA litigator, *see id.* ¶¶ 3–4, he offers a single line about the prevailing market rate: "Based on my personal understanding of the legal market in Washington, D.C., I believe these rates are actually *lower* than the rates charged by other attorneys in Washington, D.C. with equivalent levels of seniority and experience." *Id.* ¶ 6 (emphasis in original). This statement is deficient in several respects.

Under the legal standard a plaintiff must provide evidence that "the requested [hourly] rates are in line with those prevailing in the community for *similar services* by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11. (emphasis added). It is unclear from Braga's vague statement whether the "other attorneys" he references are engaged in similar FOIA litigation. Nor does his declaration recite "precise fees that attorneys with similar qualifications have received." *DL*, 924 F.3d at 589, citing *Covington*, 57 F.3d at 1107; *see also Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326 ("[W]hen the attorney states his belief as to the relevant market rate, he should be able to state . . . that it was formed on the basis of several *specific* rates he knows are charged by other attorneys."). Therefore, the declarations submitted by plaintiffs fail to establish the prevailing rates for FOIA practitioners in Washington, D.C.

In addition to the declarations, plaintiffs cite several cases for the proposition that the "LSI *Laffey* rates are the appropriate rates to use for the D.C. market." Pls.' Reply at 8. But that statement overlooks the fact that the LSI Matrix is supposed to apply to complex federal litigation not the general "D.C. market." So the two D.C. Circuit cases plaintiffs cite, involving significant

class action suits are inapplicable here. *See DL*, 924 F.3d at 585 (involving IDEA class action suit); *Salazar v. District of Columbia*, 809 F.3d 58, 64–65 (D.C. Cir. 2015) (involving a Section 1983 class action suit). In both *DL* and *Salazar* it was undisputed that the cases were properly characterized as "complex federal litigation," and the Court found that the record was sufficient to establish the prevailing rates, and that the D.C. government had failed to present sufficient rebuttal evidence to support the use of the lower rates in the USAO Matrix. *DL*, 924 F.3d at 591, 593–94; *Salazar*, 809 F.3d at 64–65.

Plaintiffs point to two FOIA cases, but those cases do not provide an analysis of the prevailing market rate since that issue was undisputed. *See American Oversight v. U.S. Dep't of Justice*, 375 F. Supp. 3d 50, 70 (D.D.C. 2019) (noting that defendants "do not challenge the use of the LSI-*Laffey* Matrix" and offering no further analysis on this point); *see also Judicial Watch, Inc. v. U.S. Dep't of Justice*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011) (stating that "[b]ecause [defendant] does not dispute [plaintiff's] rate calculations, the Court will accept them"). In *Judicial Watch*, it is not even clear whether the LSI Matrix was used, since the court simply stated that it would apply the "*Laffey* Matrix" but it did not indicate which version. 744 F. Supp. at 232.[5] So in the end, plaintiffs rely on a single FOIA case to demonstrate that the LSI Matrix rates apply to FOIA practitioners in Washington, D.C.

---

5    The other district court cases plaintiffs cite are also unpersuasive. In *Smith v. District of Columbia*, a case brought under 42 U.S.C. § 1988, the court accepted the LSI *Laffey* Matrix after noting that its inflation index was better tailored to legal services than the USAO Matrix inflation index. 466 F. Supp. 2d 151, 156 (D.D.C. 2006). But this is no longer the case since the 2015 update to the USAO Matrix. The other cases plaintiffs cite are IDEA or Section 1988 cases, not FOIA cases, and they predate the 2015 changes to the USAO matrix. *See Ricks v. Barnes*, No. 05-1756, 2007 WL 956940, *5 (D.D.C. Mar. 28, 2007); *McDowell v. District of Columbia*, No. 00-594, 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001).

This case is similar to *Eley v. District of Columbia*, where the D.C. Circuit held that the plaintiff failed to meet her burden because "absent from her submission . . . [was] evidence that her 'requested rates are in line with those prevailing in the community for *similar services*,' i.e., IDEA litigation." 793 F.3d at 104, quoting *Covington*, 57 F.3d at 1109 (emphasis in original). In that case, the plaintiff's evidence consisted of "the LSI *Laffey* Matrix, [Michael] Kavanaugh's declaration explaining the LSI *Laffey* Matrix, and her lawyer's verified statement averring that he charged his paying clients the rates in the LSI *Laffey* Matrix," as well as "four cases that had employed the LSI *Laffey* Matrix – none of which was an IDEA case." *Id.* Based on that evidence, the Court held that the plaintiff had not met her burden of "justifying the reasonableness of the rates." *Id.*

After reviewing the full record in this case, the Court finds that it is bound by the guidance in *Eley*, and that application of the precedent leads to same conclusion here. Plaintiffs' evidence is insufficient to establish that FOIA practitioners in Washington, D.C. receive rates in line with the LSI Matrix for complex federal litigation. Notably, nowhere in their pleadings do plaintiffs invoke the term "complex federal litigation" much less explain how this case would qualify. *See generally* Pls.' Mot.; Pls.' Reply. Nor do plaintiffs' declarations provide the precise hourly rates obtained by other FOIA litigators in similar cases in the area, and the cases plaintiffs cite are largely inapplicable. Accordingly, the Court will utilize the lower USAO Matrix rates.

### III. The Reasonable Hourly Rate for Administrative Tasks

Defendants challenge plaintiffs' use of an "exorbitant rate of as much as $865 per hour for administrative tasks." Defs.' Opp. at 4. Plaintiffs maintain that charging such a high rate for administrative tasks is appropriate because counsels' "small public interest firm does not have the luxury of assigning what must be done to prepare and file a motion for summary judgment to a

14

staff of associates, paralegals, and law clerks." Pls.' Reply at 7. While the Court agrees that plaintiffs' counsel should be compensated for these tasks, it finds that using the lawyers' full hourly rates is excessive for non-legal work.

As a general matter, clerical and administrative services amount to non-billable overhead. *Michigan v. U.S. Envtl. Prot. Agency*, 254 F.3d 1087 at 1095–96 (D.C. Cir. 2001). But courts in this district have also held that a plaintiff should not be penalized for hiring solo practitioners or small law firms that do not have the staff or support team of a major law firm. *See, e.g., Bucher v. District of Columbia*, 777 F. Supp. 2d 69, 75–76 (D.D.C. 2011). In accordance with both of these principles, several courts in this district have adopted a middle-ground approach by awarding solo practitioners and small-firms attorneys' fees for clerical and administrative work at a reduced rate. *See e.g.*, *A.C. ex rel. Clark v. District of Columbia*, 674 F. Supp. 2d 149, 157–58 (D.D.C. 2009) (reducing counsel's hourly rate for administrative tasks to $140.00 to account for the fact that administrative tasks should be billed at a lower hourly rate); *Thomas ex rel. A.T. v. District of Columbia*, No. 03-cv-1791, 2007 WL 891367, at *13 (D.D.C. Mar. 22, 2007) (reducing counsel's hourly rate for clerical tasks from $380.00 to $160.00). Therefore, the Court finds that the 2015 USAO hourly rate for paralegals and law clerks – $164 per hour – is most appropriate for the administrative work completed by attorneys Meyer and Lewis.

Based on its review of the Time Records, the Court concludes that 9.16 hours of Meyer's time and 1.25 hours of Lewis' time involved administrative tasks, so these hours will be

compensated at the $164.00 per hour rate. *See* Time Records at 1–3 (KM entries on 06/16/17, 06/19/17, 03/30/18), (LL entries on 06/26/17).[6]

## IV. Calculation of Reasonable Attorneys' Fees for the Merits

Taking into account the adjustment of the attorneys' hourly rates for legal work and administrative tasks under the USAO Matrix and the exclusion or reduction of excessive or unnecessary time entries, plaintiffs will be awarded the following attorneys' fees for the merits of the underlying case:[7]

Katherine A. Meyer[8]:
- Legal Work: 64.55 hrs X  $602 per hr = $38,859.10
- Administrative Work: 9.16 hrs X  $164 per hr = $1,502.24

Elizabeth Lewis[9]:
- Legal Work: 17.75 hrs X  $334 per hour = $5,928.50
- Administrative Work: 1.25 hrs X  $164 per hour = $205.00

---

6   These are the same number of hours that defendants contend are administrative in nature. Ex. A to Defs.' Opp. [Dkt. # 27-1]. Plaintiffs do not challenge the number of hours devoted to administrative tasks, instead only disputing whether a lower hourly rate should apply for these hours. *See* Pls.' Reply at 7.

7   Although the attorneys' rates increased on May 31, 2018, all hours logged for the underlying litigation were prior to this date, thus the rates used are those in the 2015 USAO Matrix prior to May 31, 2018.

8   Plaintiffs requested compensation for 78.71 hours of Meyer's time. Pls.' Mot. at 23. The Court deducted 5 hours for excessive time spent drafting the "background" section for the motion for summary judgment brief and it reclassified 9.16 hours as administrative work.

9   Plaintiffs requested compensation for 23.5 hours of Lewis' time. Pls.' Mot. at 23. The Court found that 1.25 of those hours involved administrative work. The Court eliminated the three hours she spent researching a waiver argument, and plaintiffs agreed to exclude .75 hours Lewis spent on a blog post and .75 on the filing of the complaint. Pls.' Reply at 3 n.1; *see* Time Records (KM entry on 06/16/17; LL entry on 06/16/17).

Brieanah Schwartz[10]:
- 4.9 hrs  X  $164 per hour = $803.60

This amounts to an attorneys' fee award of $47,298.44 for the underlying FOIA litigation.

**V.      Fees on Fees**

Plaintiffs request $26,928.00 for fees on fees which they itemize as $14,790.00 for the fee application, *see* Pls.' Mot. at 24, and $12,138.00 for the reply brief. Pls.' Reply at 11.[11] Defendants oppose plaintiffs' fees on fees request as "patently unreasonable" and an "unsupportable windfall," insisting that an appropriate amount should not exceed $10,000.00. Defs.' Opp. at 2, 6.

"While it is settled in this circuit that hours reasonably devoted to a request for fees are compensable, fees on fees must be reasonable, and not excessive." *Elec. Privacy Info. Ctr. v. FBI*, 80 F. Supp. 3d 149, 162 (D.D.C. 2015) (internal citations and edits omitted). This means the Court must "scrutinize" fees on fees petitions "to insure that the total is reasonable and . . . does not represent a windfall for the attorneys." *Id.* at 162–163, citing *Boehner v. McDermott*, 541 F. Supp. 2d 310, 325 (D.D.C. 2008); *see also Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 959–60 (D.C. Cir. 2017).

---

10      Plaintiffs requested compensation for 7.81 hours of Schwartz's time. Pls.' Mot. at 23. The Court deducted 1.38 hours of unnecessary time spent researching discovery in civil litigation. Plaintiffs agreed to exclude an additional 1.53 hours which were inadvertently included. Pls.' Reply at 3 n.1.

11      Attorney Meyer spent 15.6 hours on the fee application and 13 hours on the reply brief, for a total of 28.6 hours. Pls.' Mot. at 24; Pls.' Reply at 11 n.4. Law clerks spent 6.38 hours on the fee application and 4.58 hours on the reply brief, for a total of 10.96 hours. Pls.' Mot. at 24; Pls.' Reply at 11 n.4.

After applying the corresponding 2015 USAO Matrix rates, the fees on fees amount would be reduced to $19,351.16.[12] However, the Court finds that a further reduction is warranted because this amount is nearly half of the total fee award for litigating the merits which is excessive. Attorney Meyer spent almost as much time on the reply brief (13 hours), as she did on the petition for attorneys' fees (15.6 hours), even though the reply brief unnecessarily repeated a number of the same arguments. *See* Time Records; Suppl. Decl. of Katherine Meyer [Dkt. # 28-1] ¶ 4. Therefore, in its discretion, the Court will reduce the fees on fees award to $12,500.00, which is more than 25% of the fee for litigating the underlying FOIA matter.

## CONCLUSION

For the reasons stated, the Court will grant in part and deny in part plaintiffs' motion for attorneys' fees, and award $47,298.44 in attorneys' fees for the underlying litigation, $12,500.00 fees on fees, and $2,097.31 in costs. In total, the Court awards plaintiffs $61,895.75 in attorneys' fees and costs. A separate order will issue.

*[signature: Amy B Jackson]*

AMY BERMAN JACKSON
United States District Judge

DATE: September 29, 2019

---

[12] Attorney Meyer spent 28.6 hours on the fee petition at the 2015 USAO rate of $613 per hour. *See* Defs.' Opp. at 3. The law clerks spent 10.96 hours on the fee petition at the 2015 USAO rate of $166 per hour. *See id.* This calculates to a total of $19,351.16 for litigating the fee petition. The 2015 USAO rates used for this calculation are those listed for *after* May 31, 2018, as all work done for the fee petition occurred after this date.

18